SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ROBERT MUSSIG, Cal. Bar No. 240369
DEVIN S. LINDSAY, Cal. Bar No. 324967
EMMA HUSSEMAN, Cal. Bar No. 347097
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
E mail        rmussig@sheppardmullin.com
              dlindsay@sheppardmullin.com
              ehusseman@sheppardmullin.com

Attorneys for Defendant
GAT AIRLINE GROUND SUPPORT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS HERRERA GONZALEZ, on behalf of himself and all other similarly situated, and the general public,<br><br>                    Plaintiff,<br><br>          v.<br><br>GAT AIRLINE GROUND SUPPORT, INC., and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No.:    24-3652<br><br>[San Francisco Superior Court Case No . CGC-24-614549]<br><br>**DEFENDANT GAT AIRLINE GROUND SUPPORT, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, 1446, 1453**<br><br>[*Filed concurrently with Notice of Interested Parties*]<br><br>Complaint filed:  May 9, 2024<br>Trial Date:    None set |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant GAT Airline Ground Support, Inc. hereby removes the above-entitled action, <u>Jesus Herrera Gonzalez v. GAT Airline Ground Support, Inc.</u>, pending in the Superior Court of California, County of San Francisco, Case No. CGC-24-614549 to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446. This Court has original subject matter jurisdiction over Plaintiff Jesus Herrera Gonzalez's lawsuit pursuant to the Class Action Fairness Act of 2005 ("CAFA") because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper for the following reasons:

## I.     BACKGROUND AND PLEADINGS

1.     On May 9, 2024, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of San Francisco (the "Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.     Plaintiff's Complaint asserts eight causes of action against Defendant: (1) failure to pay all wages earned; (2) vacation pay forfeiture; (3) rest period violations; (4) meal period violations; (5) failure to indemnify; (6) wage statement violations; (7) waiting time penalties; and (8) unfair competition.

3.     On June 6, 2024, Plaintiff served a copy of the Summons and Complaint and other accompanying documents on Defendant.  True and correct copies of the (1) Summons, (2) Complaint, (3) Civil Case Cover Sheet,  (4) Notice of Case Assignment and Case Management Conference, (5) Alternative Dispute Resolution Information Package, and (6) proof of service are attached hereto as **Exhibit B**.

4.     Defendant has not filed any pleadings or papers in this action.

5.     The exhibits listed above constitute all prior pleadings and documents filed in the state court in this matter.

SMRH:4881-9058-0169.1                                                NOTICE OF REMOVAL

## II.    TIMELINESS OF REMOVAL

6.    As required by 28 U.S.C. § 1446(b), Defendant has timely filed this Notice of Removal.

7.    The time for filing a Notice of Removal does not commence until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or if the case alleged in the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446; see also Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999) (holding that the 30-day window to remove does not commence until formal service of the summons and complaint is complete under state law).

8.    The service of process which triggers the 30-day period to remove is governed by state law. City of Clarksdale v. BellSouth Telecomms., Inc., 428 F.3d 206, 210 (5th Cir. 2005) ("the term 'service of process' is defined by state law.").

9.    The 30-day time limit to remove was triggered by Plaintiff's service of the Summons and Complaint on June 6, 2024. See Exh. B.

10.    This Notice of Removal is timely because it has been filed within 30 days after service of the Complaint on Defendant on June 6, 2024. See Cal. Code Civ. Proc. § 415.130 ("A summons may be served by mail as provided in this section. A copy of the summons and of the complaint shall be mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgment provided for in subdivision (b)."); 28 U.S.C. § 1446(b).

## III.    CLASS ACTION FAIRNESS ACT

11.    This Court has original jurisdiction over this matter under CAFA, which is codified in pertinent part in 28 U.S.C. §1332(d)(2). This action is properly removable pursuant to the provisions of 28 U.S.C. § 1441(a), in that: (1) the proposed civil class action contains at least 100 putative class members; (2) the defendant is not a state, state official, nor other governmental entity; (3) the aggregate amount in controversy exceeds $5,000,000; and (4) there is diversity of

1   citizenship between at least one class member and one defendant. 28 U.S.C. §§ 1332(d)(2) &

2   (d)(6); 332(d)(5)(B).

3       **A.      Plaintiff And Defendant Are Minimally Diverse**

4       12.     CAFA requires only minimal diversity for the purpose of establishing federal

5   jurisdiction. At least one purported class member must be a citizen of a state different from any

6   named defendant. See 28 U.S.C. § 1332(d)(2)(A). Here, Defendant alleges that Plaintiff is a

7   citizen of a state (*i.e.*, California) that is different from the state of citizenship of the Defendant

8   (*i.e.*, Alabama and Georgia).

9       **1.      Plaintiff Is A Citizen Of California**

10      13.     To establish citizenship for diversity purposes, a natural person must be both a

11  citizen of the United States and a domiciliary of one particular state. Kantor v. Wellesley

12  Galleries, Inc., 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity

13  purposes under federal common law a party must . . . be domiciled in the state."). Residence is

14  *prima facie* evidence of domicile. State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th

15  Cir. 1994) ("the place of residence is *prima facie* the domicile"); see also Zavala v. Deutsche Bank

16  Trust Co. Americas, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013)

17  (where a plaintiff's complaint alleges she resides in California, "in the absence of evidence to the

18  contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by

19  the individual's domicile at the time that the lawsuit is filed. Armstrong v. Church of Scientology

20  Int'l, 243 F.3d 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a

21  citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing

22  Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986)).

23      14.     Defendant alleges that Plaintiff provided Defendant with his home address during

24  the course of his employment for purposes of his personnel file, payroll checks, state payroll, and

25  tax withholdings.  Defendant alleges that Plaintiff's personnel file during his employment reveals

26  that Plaintiff resided in San Francisco, California.  Additionally, Plaintiff asserts that he is a

27  resident of California. Exh. A, Compl., ¶ 3.

28

15.     Plaintiff's intent to remain domiciled in California is evident from the fact that he brought his lawsuit against Defendant in San Francisco Superior Court. Plaintiff therefore is and was at the initiation of this civil action, a citizen and resident of the State of California.

### 2.     Defendant Is Not A Citizen Of California

16.     Defendant alleges that it is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). Moreover, Defendant alleges it is not a state, state official, or government entity.

17.     For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1). The "'principal place of business' refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." Hertz Corp. v. Friend, 559 U.S. 77, 80-81, 92-93 (2010). The relevant considerations under the "nerve center" test include the following: (a) where the directors and stockholders meet; (b) where the executives live and have their offices; (c) where the administrative and financial offices are located and the records kept; (d) where the corporate income tax return is filed; (e) where the "home office" is located; and (f) where day-to-day control of the business is exercised. See Ho v. Ikon Office Solutions, Inc., 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (holding the nerve center to be the location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

18.     Defendant alleges that it is, and has been, incorporated under the laws of Alabama. Defendant alleges that it's principal place of business is in Peachtree City, Georgia. Defendant alleges that GAT Airline Ground Support, Inc.'s corporate headquarters is in Peachtree City, Georgia.  Defendant asserts that Peachtree City, Georgia is where the majority of its executive and administrative functions are performed, where its corporate offices and executives are located, and where its high-level officers direct, control, and coordinate the company's activities. As such, Defendant's corporate headquarters and nerve center were, at the time of filing of the state court action, and remain to date, located in Peachtree City, Georgia.

19.    Therefore, the minimal diversity requirement under CAFA is satisfied because Plaintiff is a citizen of California and Defendant is a citizen of Alabama and Georgia. 28 U.S.C. § 1332(c)(1).

**3.    The Citizenship Of The Doe Defendants Must Be Disregarded**

20.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. Fristos v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); Soliman v. Philip Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 50, inclusive, does not deprive this Court of jurisdiction. Abrego v. Dow Chemical Co., 443 F.3d 676, 679-80 (9th Cir. 2006) (holding that the citizenship of fictitious defendant is disregarded in removals pursuant to CAFA).

**B.    The Amount In Controversy Exceeds The Statutory Minimum**

21.    CAFA requires that the aggregate amount in controversy for the class members' claims exceed the sum or value of five million dollars ($5,000,000.00). 28 U.S.C. § 1332(d)(6). By demonstrating that the amount in controversy exceeds this threshold, Defendant does not concede the validity of Plaintiff's claims nor the likelihood that Plaintiff will recover anything.

22.    Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. In Standard Fire Ins. Co. v. Knowles, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); see also Schiller v. David's Bridal, Inc., 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010).

23.    To satisfy this standard, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). A defendant need not

set forth evidence establishing the amount in its notice of removal. Id. A defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir.2004) ("the parties need not predict the trier of fact's eventual award."). "[A] defendant satisfies the amount-in-controversy requirement under CAFA if it is *reasonably possible* that it may be liable for the proffered [] damages amount." Greene v. Harley Davidson, 2020 WL 3969285 (9th Cir. 2020).

24.    "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." Henry v. Cent. Freight Lines, Inc., 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Communs., Inc., 627 F.3d 395, 400 (9th Cir. 2010); see also Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *3 (E.D. Cal. 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe") (original emphasis); see also Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe"), aff'd by 631 F.3d 1010, (9th Cir. 2011)).

25.    The Ninth Circuit has held the amount in controversy is determined "at the time of removal." Kroske v. US Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). However, in Chavez v. JPMorgan Chase, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit also held that the fact "the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." Chavez, 888 F.3d at 417 (original emphasis). Pursuant to Chavez, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in

controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." Id. at 414-15.

26.     As established by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); Guglielmino v. McKee Foods Corp., 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

27.     If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100%, except where the plaintiff specifically alleges otherwise. Muniz v. Pilot Travel Ctrs. LLC, 2007 WL 1302504, at *4 (E.D. Cal., May 1, 2007) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)); see also Soratorio v. Tesoro Ref. and Mktg. Co., LLC, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); Arreola v. The Finish Line, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

28.     Similarly, numerous other Ninth Circuit District Courts have concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. See Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (holding that where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); Franke v. Anderson Merchandisers LLC, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); Feao v. UFP Riverside, LLC, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d, 1025 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); Jones v. Tween Brands, Inc., 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (implementing a 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

29.     Here, the Complaint asserts eight causes of action against Defendant: (1) failure to pay all wages earned; (2) vacation pay forfeiture; (3) rest period violations; (4) meal period violations; (5) failure to indemnify; (6) wage statement violations; (7) waiting time penalties; and (8) unfair competition.

30.     Plaintiff's Complaint seeks to certify the following class: "[a]ll persons Defendants have employed or otherwise contracted with in California as non-exempt, hourly employees, including, but not limited to airline ground support supervisors, individuals performing work comparable to the aforementioned, and individuals in similar positions, at any time during the period beginning four years prior to the filing of this action and ending on the date that final

judgment is entered in this action..." Exh. A, Compl., ¶ 10. As such, for purposes of this Notice of Removal, the relevant time period is **May 9, 2020 to present**.

31.     As set forth below, the amount in controversy for the class significantly exceeds $5,000,000.00.

32.     During the time period identified in the Complaint, Defendant alleges that the putative class consisted of approximately 4,000 non-exempt employees, who worked a total of approximately 135,000 workweeks.  Defendant alleges that the average hourly rate of pay for these individuals is approximately $17.00 per hour during the proposed class period.

33.     Plaintiff alleges that for him and every other member of the putative class, Defendant uniformly (1) failed to compensate Plaintiff and the putative class for all hours worked (including minimum wages and overtime wages), (2) failed to provide Plaintiff and the putative class with timely, 30-minute, uninterrupted meal periods, (3) failed to authorize and permit Plaintiff and the putative class to take off-duty, 10-minute, uninterrupted rest periods, (4) failed to pay Plaintiff and the putative class for earned, unused vacation time, (5) failed to indemnify Plaintiff and the putative class for necessary business expenses, (6) failed to furnish accurate wage statements to Plaintiff and the putative class, and (7) failed to timely pay Plaintiff and the putative class all earned wages during and at the conclusion of employment. Exh. A, Compl., ¶¶ 21-31. Plaintiff alleges that he and other putative class members earned commissions and other non-discretionary bonuses, and that Defendant did not include this income in its regular rate calculation for purposes of overtime, doubletime, and premium wages. Id. at ¶ 25. For most of these claims, there are no allegations indicating the purported violations occurred only "sometimes."

34.     Plaintiff seeks to recover, on behalf of himself and the alleged class, general unpaid wages, including vacation wages, meal period premiums, rest period premiums, liquidated damages, statutory penalties including waiting time penalties, restitution, actual damages, prejudgment interest, attorney's fees and costs. Exh. A, Compl., ¶¶ 44-45, 69-70, 83-84, 91-92, 102, 110, 116, Prayer for Relief.

SMRH:4881-9058-0169.1

NOTICE OF REMOVAL

35.     **Defendant provides the following calculations only to demonstrate that the amount in controversy in this case exceeds the jurisdictional amount in controversy under CAFA. Defendant makes no admission of any liability nor damages with respect to any aspect of this case, nor as to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.**

### 1.     Failure to Pay All Wages

36.     In his first cause of action, Plaintiff alleges that Defendant "failed to compensate Plaintiff and the Class Members for all hours worked, including, but not limited to minimum, regular, overtime and doubletime wages for all minimum, regular, overtime and doubletime hours, respectively, that they worked at the correct rates of pay." Exh. A, Compl. ¶ 42.

37.     Based on the above allegation, Plaintiff alleges Defendant "at all times" "failed to compensate Plaintiff and the other Class Members for all hours wored at the correct rates of pay. . ." Exh. A, Compl. ¶ 43.

38.     Plaintiff does not, however, provide any details as to how many hours per day or week he and the putative class members allegedly worked without compensation.

39.     The statute of limitations for recovery of unpaid wages under California Labor Code Section 1194 is three years. *See* Cal. Code Civ. § Proc. 338. Plaintiff's UCL claim, however, extends the liability period for the recovery of unpaid wages to four years. *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued."). For determining the amount in controversy for Plaintiff's unpaid wage claim, the UCL's four-year statute of limitations applies.

40.     Although Defendant denies Plaintiff's allegation that he and the putative class are entitled to relief, it is reasonable to assume, based on the language in the Complaint, that Plaintiff alleges that employees worked at least 60 minutes of unpaid time per workweek, which amounts to a mere 12 minutes per shift worked for full-time employees.

41.     Plaintiff also does not provide any details as to how many overtime hours per day or week he and the putative class members allegedly worked without compensation.

42.   Although Defendant denies Plaintiff's allegation that he and the putative class are entitled to relief, it is reasonable to assume, based on Plaintiff's allegations, that employees worked, at minimum, 30 minutes of unpaid overtime per week, which amounts to a mere six minutes per shift worked.

43.   Defendant alleges that it employed approximately 4,000 current or former nonexempt employees from May 9, 2020 to present. Defendant alleges those employees worked approximately 135,000 workweeks during that time period. As such, the reasonable estimate of the amount placed in controversy by Plaintiff's unpaid wage claim as to minimum wages is **$2,295,000.00** [($17.00/hour * 1 hour per week * 135,000 workweeks].  Additionally, the reasonable estimate of the amount placed in controversy by Plaintiff's unpaid wage claim as to overtime wages is **$1,721,250.00** [($17.00/hour * 0.5 hours per week * 135,000 workweeks * 1.5 OT premium)].  Thus, Plaintiff's first cause of action for unpaid wages places approximately **$4,016,250.00**.

### 2.   Meal And Rest Period Claims

44.   Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided a meal period or a rest period. See Lyon v. W.W. Grainger, Inc., 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per workday and one rest break violation per workday). The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code in the Complaint, Defendant will conservatively assume that putative class members were not provided just one meal period and one rest period each workweek."). However, Plaintiff's UCL claim arguably extends the liability period for any alleged meal and rest period violations to four years. See Cal. Bus. & Prof. Code § 17208; see also Naranjo v. Spectrum Sec. Servs., Inc., 13 Cal. 5th 93, 110, 509 P.3d 956 (2022). As such, the UCL's four-year statute of limitations applies when determining the amount in controversy for these claims.

45.     For his third claim, Plaintiff alleges that Defendant "denied Plaintiff and the other Class Members their 30-minute off-duty meal period within the first five hours of work." Exh. A, Compl. ¶ 67. For his fourth claim, Plaintiff alleges that Defendant failed "to authorize and permit Plaintiff and the Class members to take all timely rest periods." Id. at ¶ 78. For both claims, Plaintiff alleges that he and the putative class are entitled to be paid one hour of additional wages for each workday he or she was not provided a meal and/or rest period. Id. at ¶¶ 70, 84.

46.     Because Plaintiff alleges that "at all relevant times…Defendant had a policy, practice, or a lack of a policy which resulted in Defendant[] not providing the [sic] and the Class Members with all off-duty meal periods" and "rest breaks" (Exh. A, Compl. ¶ 68, 81), Defendant will conservatively assume that Plaintiff alleges that putative class members were not provided two meal periods and two rest periods each workweek (which is merely a 40 percent violation rate for meal periods and 20 percent violation rate for rest periods, assuming normal 8-hour shifts).

47.     Assuming that Defendant's non-exempt employees in California during the relevant time period were not provided two meal periods and two rest periods each workweek, the amount placed in controversy by Plaintiff's meal and rest period claims is **$9,180,000.00** [($17.00/hour * 2 meal period premium payments * 2 rest period premium payments * 135,000 workweeks)].

### 3.     Waiting Time Penalties Claim

48.     Pursuant to Labor Code § 203, a willful failure to pay all wages due at the time of termination or resignation results in a penalty of continued wages for each day a former employee is not paid, up to a thirty day maximum. See Cal. Lab. Code § 203(a). The statute of limitations for Plaintiff's waiting time penalties claim is three years. Cal. Lab. Code § 203(b); Pineda v. Bank of Am., N.A., 50 Cal.4th 1389, 1390 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338 . . . [the employee has] three years to sue for the unpaid final wages giving rise to the penalty").

49.     Plaintiff alleges that Defendant "failed to pay [Plaintiff] and all of the other Class Members whose employment ended al of the earned but unpaid wages described above by the conclusion of their employment. . ." Exh. A, Compl., ¶ 107.

50.     From May 9, 2021 to present, Defendant alleges approximately 2,000 non-exempt employees were separated from their employment with Defendant. Assuming each putative class member averaged a work schedule of eight hours per day, a reasonable estimate of the amount in controversy for waiting time penalties is approximately **$8,160,000.00** [$17.00 per hour * 8 hours/day * 30 days * 2,000 former employees].

**4.     Failure to Provide Accurate Wage Statements**

51.     In addition, Plaintiff alleges that he and the putative class were not provided with timely and accurate wage statements in violation of Cal. Labor Code § 226.

52.     Plaintiff alleges that Defendant failed to "provide Plaintiff and the other Class Members with accurate wage statements . . ." Exh. A, Compl. ¶ 99.

53.     Conservatively assuming Plaintiff alleges that at least half the class members experienced a sufficient number of wage statement violations to reach the maximum penalty, the amount placed in controversy is at least 2,000 x $4,000 = **$8,000,000.00**.  Labor Code section 226(e)(1) (maximum penalty is $4,000).

**5.     Vacation Pay Claim**

54.     Labor Code section 227.3 requires an employer to pay an employee all vested vacation time, as wages, at his or her final rate at the time of termination, unless provided otherwise by a collective-bargaining agreement.

55.     In his second cause of action, Plaintiff alleges that Defendant's vacation policy "fails to provide for proportionate vacation pay accruals as employees render labor and causes employees to forfeit their vested rights to vacation pay." Exh. A, Compl. ¶ 53.

56.     Based on the above allegation, Plaintiff alleges Defendant "did not pay Plaintiff or the Class Members at the time they were terminated for any unused but accrued vacation days and the like." Exh. A, Compl. ¶ 57.

1

      **6.**      **Failure to Reimburse Business Expenses**

2        57.      Labor Code section 2802 requires an employer to reimburse employees for all

3 business expenses incurred by the employee in direct consequence of the discharge of his or her

4 duties or of his or her obedience to the directions of the employer.

5        58.      Plaintiff alleges that Defendant failed to "indemnify Plaintiff and the Class

6 Members for the reasonable expenses they incurred during the course of performing their duties. .

7 ." Exh. A, Compl. ¶ 90. Plaintiff claims that Defendant failed to reimburse necessary expenses

8 such as mobile phones, replacement uniforms and related items. Exh. A, Compl. ¶ 27.

9        59.      Plaintiff's minimum wage, overtime, meal period, and rest period claims already

10 total over the $5 million jurisdictional minimum as required by CAFA. Thus, Plaintiff's claims for

11 vacation pay forfeiture and failure to reimburse business expenses further increases the amount in

12 controversy beyond the jurisdictional minimum of $5 million.

13        60.      Based on the forgoing calculations, the aggregate amount in controversy for the

14 putative class for all asserted claims, exclusive of attorneys' fees, is at least approximately

15 **$29,356,250.00**, calculated as follows:

16
- **$4,016,250.00** Unpaid Wages Claim
- **$9,180,000.00** Meal/Rest Period Claims
17
- **$8,160,000.00** Waiting Time Penalties Claim
18
- **$8,000,000.00** Wage Statement Claim

19        61.      As such, the amount in controversy requirement under CAFA is satisfied.

20      **7.**      **Attorneys' Fees**

21        62.      Plaintiff also seeks attorneys' fees. Exh. A, Compl. Prayer for Relief. Under Ninth

22 Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in

23 controversy. Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an

24 underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary

25 language, such fees may be included in the amount in controversy."). In Fritsch, the Ninth Circuit

26 held that future attorneys' fees that are claimed but not accrued at the time of removal must

27 nonetheless be considered in the amount in controversy. Fritsch v. Swift Transp. Co. of Ariz.,

28 LLC, 899 F.3d 785 (9th Cir. 2018)

63.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. <u>Longmire v. HMS Host USA, Inc.</u>, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (internal citation omitted); <u>Muniz</u>, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

64.    In the class action context, courts have held that parties may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. <u>Greene v. Harley Davidson</u>, 2020 WL 3969285, n.4 (9th Cir. 2020); <u>Garibay v. Archstone Communities LLC</u>, 539 F. App'x 763, 764 (9th Cir. 2013); <u>Rodriguez v. Cleansource, Inc.</u>, 2014 WL 3818304, at *4 (S.D. Cal. 2014); <u>Marshall v. G2 Secure Staff, LLC</u>, 2014 WL 3506608 (C.D. Cal. 2014); <u>Jasso v. Money Mart Exp., Inc.</u>, 2012 WL 699465 (N.D. Cal. 2012); <u>Ramos v. Schenker, Inc.</u>, 2018 WL 5779978, at *3 (C.D. Cal. 2018); <u>Ramirez v. Benihana Nat'l Corp.</u>, 2019 WL 131843, at *2 (N.D. Cal. 2019); <u>see also</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees").

65.    Here, an additional minimum amount of **$7,339,062.50** must be included in the amount in controversy [($29,356,250.00 x 25% = $7,339,062.50)]. As such, the total amount in controversy, including attorneys' fees, would be **$36,695,312.50** during the relevant time period, plus some additional unascertained amount in allegedly unpaid vacation pay and unreimbursed expenses.

66.    For all of the forgoing reasons, the amount placed in controversy by Plaintiff's Complaint is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.

**C.    No CAFA Exceptions Apply**

67.    CAFA contains certain exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4). None of these exceptions are applicable here.

68.    All of the enumerated exceptions only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28

NOTICE OF REMOVAL

U.S.C. §§ 1332(d)(3), 1332(d)(4)(A)(i)(II), 1332(d)(4)(B). Here, the action was originally filed in California, and as detailed above in Section III, Defendant is and has not been a citizen of California. As such, these exceptions do not apply.

69.    Accordingly, because diversity of citizenship exists and the amount in controversy exceeds $5,000,000.00, this Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).

### III.    VENUE IS PROPER

70.    Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 1391(a), 1441, 1446(a), and 84(c)(2). This action originally was brought within a county encompassed by the Northern District of California—the Superior Court of the State of California, County of San Francisco. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### IV.    NOTICE OF REMOVAL

71.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, writte n notice of the removal will be served upon counsel for Plaintiff and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of California, County of San Francisco, as required by 28 U.S.C. § 1446(d).

### V.    CONCLUSION

72.    For all the reasons identified above, Defendant respectfully requests that this action now pending before the Superior Court of the State of California for the County of San Francisco be removed to the United States District Court for the Northern District of California.

Dated: June 17, 2024                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                    By          */s/ Emma Husseman*
                                        _____
                                        ROBERT MUSSIG
                                        DEVIN S. LINDSAY
                                        EMMA HUSSEMAN
                                        Attorneys for Defendant
                                        GAT AIRLINE GROUND SUPPORT, INC.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of .  My business address is 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-6055.

On June 17, 2024, I served true copies of the following document(s) described as **DEFENDANT GAT AIRLINE GROUND SUPPORT, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, 1446, 1453** on the interested parties in this action as follows:

| | |
|---|---|
| David G. Spivak | Attorneys for Plaintiff |
| Caroline Tahmassian | |
| The Spivak Law Firm | T: (213) 725-9094 |
| 8605 Santa Monica Bl., | E: david@spivaklaw.com; |
| PMB 42554 | caroline@spivaklaw.com; |
| West Hollywood, CA 90069 | Paralegals: emily@spivaklaw.com; |
| | breck@spivaklaw.com |
| | Intake Assistant:daniela@spivaklaw.com com |
| | GonzalezGATAirlineGroundSupportZ12036299 @spivaklaw.filevineapp.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 17, 2024, at Los Angeles, California.


*/s/ Emma Husseman*

Emma Husseman

SMRH:4881-9058-0169.1

PROOF OF SERVICE